IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01356-DME-KLM

NICK SMITH-BEY,

    Plaintiff,

v.

WARDEN REID,
CASE MANAGER MURPHY,
CLASSIFICATION SPECIALIST OWENS,
CASE MANAGER GLIDEWELL, and
SEGREGATION SUPERVISOR LT. TROXELL,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 22; Filed October 27, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., this matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Plaintiff's Response [Docket No. 24; Filed November 17, 2008], Defendants' Reply [Docket No. 29; Filed December 1, 2008], Plaintiff's Surreply [Docket No. 34; Filed December 24, 2008],[1] the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

---

[1] Although the filing of surreplies is not contemplated by the Federal Rules of Civil Procedure or the Court's Local Rules, out of an abundance of fairness to Plaintiff the Court has considered the arguments in his Surreply.

1

I.      **Statement of the Case**

At the time of filing, Plaintiff was incarcerated by the Colorado Department of Corrections ("CDOC") at the Sterling Correctional Facility ("SCF"). On June 27, 2008, Plaintiff filed his *pro se* Complaint pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process [Docket No. 3].

Specifically, Plaintiff alleges that on January 10, 2006, while at the Centennial Correctional Facility ("CCF"), he was placed in administrative segregation for eighty-seven days, where he lost such privileges as use of the phone, the library, and his television as well as loss of exercise time and inability to order food from the canteen. *Complaint* [#3] at 5. Plaintiff alleges that these restrictions were implemented by Defendant Murphy, and authorized by Defendants Owens and Reid. *Id.* Plaintiff further alleges that the punishments were implemented without a hearing, and as punishment for a Code of Penal Discipline ("COPD") conviction that was later expunged. *Id.*

Second, Plaintiff alleges that on October 17, 2005, when he arrived at CCF, he was denied a change of clothes or underwear, soap, and toothpaste for sixteen days. *Id.* at 3. Plaintiff also alleges that on January 10, 2006, when he was placed in administrative segregation, he was denied all hygiene materials until January 26, 2006. *Id.* Plaintiff contends that Defendants "were trying to break [his] spirit thru [sic] illegal cruel and unusual punishment" in violation of his Eighth Amendment right. *Id.* Plaintiff seeks damages in the amount of seventeen million dollars. *Id.* at 9.

II.     **Standard of Review**

## A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When deciding a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007). Additionally, a court evaluating a complaint tested by a motion to dismiss may only consider the complaint and any documents attached to it as exhibits. *Hall*, 935 F.2d at 1112; *see also Erickson*, 127 S. Ct. at 2200 (evaluating sufficiency of complaint by reference only to the allegations of the complaint). Here, Defendants assert that Plaintiff fails to state a claim for Eighth and Fourteenth Amendment relief.

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a

3

recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## III.  Analysis

This action is brought pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Statute of Limitations

Defendants first argue that Plaintiff's claims are barred by the applicable statute of limitations. *Motion* [#22] at 3-4.

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). In Colorado, the limitation on a personal injury claim brought pursuant to Section 1983 is two years. *See* Colo. Rev. Stat. § 13-80-102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim). However, federal law rather than state law determines when a cause of action accrues. *See Indus.*

4

*Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Federal law provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969. That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted). Once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date. *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980). Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint. *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008); *Aldrich*, 627 F.2d at 1041 n. 4.

Plaintiff's claims arise from (1) denial of clean clothes and hygiene materials beginning on October 17, 2005, and (2) placement in administrative segregation beginning on January 10, 2006. Plaintiff did not initiate his case in this Court until on or about June 12, 2008, the date when he signed and dated his Complaint,[2] more than two years after he knew or had reason to know of the existence and cause of the injuries which are the basis of his claims for denial of due process and cruel and unusual punishment. Pursuant to the

---

[2]The mailbox rule applies to an inmate's filing of a civil rights complaint. *See Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005). Pursuant to the mailbox rule, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." *Id.* at 1165. However, the inmate must establish actual use of the prison's internal mail system in order to be provided the benefits of the mailbox rule. *Id.* The Court will assume without deciding that the mailbox rule applies to the filing date, and therefore that Plaintiff's Complaint was placed in the prison mail system on the date when he signed and dated it.

two-year statute of limitations set forth in Colo. Rev. Stat. § 13-80-102, any acts occurring prior to June 12, 2006 are time barred and must be dismissed by the Court unless Plaintiff establishes that the limitations period is subject to tolling.

The issue of tolling is governed by Colorado state law. *See Fratus*, 49 F.3d at 675. Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996). Plaintiff first argues that he "initiated his complaint in July 2007. On Sept. 28, 2007 [Plaintiff] was ordered to cure the deficiencies via an amended complaint . . . . The original filing date was well within the statute of limitations." *Response* [#24] at 2. However, the Court can find no record that Plaintiff attempted to initiate this case in July of 2007, as the first filing in the Court's electronic filing system is dated June 16, 2008 [Docket No. 1]. Moreover, the Court has searched the electronic records associated with Plaintiff's two other cases filed with this Court (Case Nos. 08-cv-02134-CMA-MJW and 04-cv-01050-MSK-PAC) and can find no indication that Plaintiff attempted to file a complaint in July of 2007 that may be associated with the instant case. As such, the Court can find no support for Plaintiff's argument that this case was actually initiated in July of 2007, and not June of 2008, as appears from the face of the Complaint. *See Complaint* [#3] at 9.

Second, liberally construing Plaintiff's Response and Surreply, he appears to argue that he is entitled to equitable tolling on all of his claims because he had to exhaust his administrative remedies prior to filing his claims here, and that he did not complete use of the grievance process until March 2, 2007, the date he received a response to his Step 3

grievance. *Response* [#24] at 2; *Surreply* [#34] at 3. "Every circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 . . . claims." *Roberts v. Barreras*, 109 Fed.Appx. 224, 226 (10th Cir. Aug. 16, 2004) (unpublished decision) (citation omitted). Plaintiff appears to allege that he filed mandatory grievances. *Response* [#24] at 2; *Surreply* [#34] at 3. However, the facts currently before the Court are not adequate to determine whether Plaintiff "pursued administrative remedies such that sufficient tolling occurred to enable [him] to avoid a statute of limitations bar." *Leal v. Georgia Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001). Because the statute of limitations defense is not patently clear from the face of the Complaint, nor based on adequately developed facts, the Court is unable to determine on a motion to dismiss whether Plaintiff's claims are barred by the statute of limitations. *See Dummar*, 543 F.3d at 619; *Aldrich*, 627 F.2d at 1041 n. 4. Accordingly, the Court declines to grant the motion to dismiss on these grounds.

**B.     Failure to State a Claim Against Defendants**

**1.     Fourteenth Amendment Claim**

Defendants next allege that Plaintiff has failed to state a viable due process claim, pursuant to the Fourteenth Amendment. *Motion* [#22] at 4-6. Plaintiff argues that "[t]he fact that [he] was punished without a C.O.P.D. hearing is clearly a violation of [his] due process rights under the U.S. Constitution." *Complaint* [#3] at 5.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citation omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d

7

1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001). Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted). Therefore, "the touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).

Prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in particular prison. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections so long as prison officials have discretion to transfer him for

whatever reason or for no reason at all."). Therefore, the mere placement in administrative segregation does not, on its own, implicate a liberty interest. *See Sandin*, 515 U.S. at 484; *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). Nonetheless, the duration and degree of segregation may be so severe as to implicate the due process clause. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006). However, the Tenth Circuit requires that district courts examine the conditions of confinement before they conclude whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citation omitted). The Tenth Circuit has identified the following relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . .; and (4) [whether] the placement is indeterminate." *Estate of DiMarco v. Wyoming Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Plaintiff alleges that he was placed in segregation for 87 days, and that during this time he lost use of the phone, the library, the "yard", his personal television, and was no longer allowed to "order food off of canteen." *Complaint* [#3] at 5. First, with respect to Plaintiff's claims that he lost his personal television while in administrative segregation, I conclude that this deprivation does not implicate a liberty interest. That is, "[w]hile an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison." *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)

9

(citations omitted). Therefore, restrictions regarding the possessions an inmate may have in his cell do not implicate a liberty interest as the prison has the discretion to determine what property an inmate may possess in his cell. *See Cosco*, 195 F.3d at 1224 (finding that prison regulations regarding what items an inmate could possess in his cell did not create a liberty interest in possessing those items).

Second, with respect to his placement in administrative segregation, Plaintiff has failed to provide details which would lead the court to the conclusion that the prison conditions he endured imposed an "atypical and significant hardship." *See Sandin*, 515 U.S. at 484. Because Colorado inmates do not have a liberty interest in avoiding segregation, the mere duration of Plaintiff's confinement in segregation, i.e., 87 days, does not serve to create a liberty interest. *See Templemen*, 16 F.3d at 369. Further, at least three of the relevant factors set forth in *DiMarco* weigh against finding an enforceable liberty interest. Construing Plaintiff's allegations as true, as required, the conditions were not atypical or extreme, his placement did not increase the duration of his confinement, and his removal from the general population was temporary. *Estate of DiMarco*, 473 F.3d at 1342. Likewise, Plaintiff's allegations of restricted exercise, access to the canteen and other privileges fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary incidents of prison life to implicate a liberty interest. *See Sandin*, 515 U.S. at 484. In short, the Complaint is devoid of facts regarding the nature of Plaintiff's detention in administrative segregation that would be sufficient to suggest the sort of extreme conditions where courts have found the *Sandin* test to be met. *See, e.g., Wilkinson*, 545 U.S. at 223 (finding that conditions at state Supermax facility imposed a significant and atypical hardship where: (1) all human contact was prohibited; (2) the lights were on 24

hours per day; (3) inmates could only exercise one hour per day in a small indoor room; (4) assignment was indefinite; and (5) inmates otherwise eligible for parole were disqualified).

Therefore, as to the alleged provision of inadequate process, because Plaintiff has failed to sufficiently allege the deprivation "of any liberty to which he was entitled, no particular process was constitutionally required." *Templeman*, 16 F.3d at 371. Accordingly, as Plaintiff has failed to show that he possessed a protected liberty interest, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**, and that Plaintiff's due process claim be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

### 2. Eighth Amendment Claim

Second, Defendants argue that Plaintiff's allegation that he was deprived of hygiene items fails to state a viable conditions of confinement claim, pursuant to the Eighth Amendment. *Motion* [#22] at 9-10.

To establish that a prisoner's conditions of confinement violate the Eighth Amendment, a prisoner must first show that the alleged deprivation was objectively "sufficiently serious," such that it resulted "in the denial of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To satisfy this requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Mere discomfort or temporary adverse conditions which pose no risk to health or safety do not implicate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Second, a prisoner must

11

show that subjectively, the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A finding of deliberate indifference requires a showing that the defendant was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he also drew that inference. *Id.* Absent a showing that the prison officials consciously understood that prison conditions create such an excessive risk, the conditions cannot be found to be a "punishment" within the meaning of the Eighth Amendment. *Id.*

Plaintiff alleges that on October 17, 2005, he was denied a change of clothes and underwear, soap and toothpaste for sixteen days. *Complaint* [#3] at 6. Plaintiff also alleges that he was denied soap and other hygiene items for another sixteen day period in January of 2006. *Id.* Other courts have determined that the deprivation of hygiene items, like clean clothes and toothpaste, may be objectively sufficiently serious to state an Eighth Amendment claim. *See, e.g., Penrod*, 94 F.3d at 1406 (holding prisoner's claim that prison officials' refusal to provide hygiene items, including access to toothpaste, causing "his gums to bleed and recede and tooth decay" states a claim for a violation of the Eighth Amendment); *Scott v. Case Manager Owens*, 80 Fed. Appx. 640, 643 (10th Cir. Nov. 7, 2003) (unpublished decision) ("a denial of basic hygiene items might meet [the Eighth Amendment standard] under extreme conditions"). However, "[a]n inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *DeSpain*, 264 F.3d at 974 (quotation omitted). In this inquiry, "the length of exposure to the conditions is often of prime importance." *Id.* Therefore, deprivations of hygiene items for short periods of time are not sufficiently serious to state a violation of the

12

Eighth Amendment. *See Dopp v. W. Dist. Of Okla.*, 105 Fed. Appx. 259, 261 (10th Cir. July 28, 2004) (unpublished decision) (finding that eight day deprivation of hygiene items not sufficiently serious to state an Eighth Amendment claim); *Bridgeforth v. Ramsey*, 1999 WL 992978, at *2 (10th Cir. Nov. 2, 1999) (unpublished decision) (holding that five day deprivation of hygiene items not sufficiently serious); *Wallin v. Alfaro*, 2005 WL 2125224, at *7 (D. Colo. Sept. 2, 2005) (unpublished decision) (finding that a thirteen day deprivation of hygiene items did not "constitute[] the extreme conditions necessary to make it a serious deprivation under the Eighth Amendment.") (internal quotation and citation omitted)). Plaintiff has alleged that he was denied hygiene items for a maximum of sixteen days. *Complaint* [#3] at 6. However, nothing in the record indicates that Plaintiff suffered any injuries or that his health was impaired as a result of the alleged denial of hygiene items. *See Complaint* [#3] at 4-6. Plaintiff has not come close to alleging a substantial risk of serious harm in this case, and in fact, has alleged no injury or risk whatsoever. *Cf. Board v. Farnham*, 394 F.3d 469, 481-82 (7th Cir. 2005) (holding prisoner's claim that prison officials' refusal to provide toothpaste for period of three-and-a-half weeks which resulted in tooth decay and the removal of several teeth states a claim for a violation of the Eighth Amendment); *Penrod*, 94 F.3d at 1406 (holding prisoner's claim that prison officials' refusal to provide hygiene items, including access to toothpaste, causing "his gums to bleed and recede and tooth decay" states a claim for a violation of the Eighth Amendment). As such, this Court is not convinced that the deprivation of hygiene items for sixteen days "constitutes the 'extreme conditions' necessary to make it a serious deprivation under the Eighth Amendment." *Wallin*, 2005 WL 2125224, at *7 (quoting *Scott*, 80 Fed. Appx. at 643)). Like the court in *Wallin*, "I do not find that an additional [eight] days is sufficient to

distinguish this case from *Dopp*, in which the Tenth Circuit succinctly held that '[b]eing deprived of hygiene products for eight days is not sufficiently serious to implicate the Eighth Amendment." *Id.* (citing *Dopp*, 105 Fed. Appx. at 261).

However, even assuming the existence of a sufficiently serious objective deprivation, Plaintiff has not shown that any of the named Defendants knew of and disregarded an excessive risk to his health or safety. *Farmer*, 511 U.S. at 837. Therefore, even though Plaintiff alleges that Defendants denied him basic hygiene supplies, he has not alleged that they acted with deliberate indifference to his health and safety. *See, e.g., Owens v. Sebelius*, 357 F.Supp.2d 1281, 1285-86 (D. Kan. 2005) ("to the extent that the temporary deprivation of basic hygiene items could constitute an Eighth Amendment violation, plaintiff has not alleged that defendants were aware of an 'excessive risk' to his health and safety.") (quoting *Farmer*, 511 U.S. at 837) (other citations omitted). Plaintiff's allegations are not adequate to state an Eighth Amendment violation and Plaintiff's Second Claim for Relief is properly dismissed for failure to state a claim upon which relief can be granted.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**, and that Plaintiff's Eighth Amendment claim be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

## IV. Conclusion

As set forth above, I respectfully **RECOMMEND** that Defendants' **Motion to Dismiss** [Docket No. 22; Filed October 27, 2008] be **GRANTED** and that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R.

Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:
\_\_s/ Kristen L. Mix_____
United States Magistrate Judge

Dated:  February 20, 2009